United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY,<br>　　Plaintiff,<br>　　vs.<br>CHITRA DARKE, ET AL.,<br>　　Defendants. | CASE NO. 19-cv-02225-YGR<br><br>**ORDER GRANTING SCOTTSDALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 43 |

Now before the Court is plaintiff Scottsdale Insurance Company's ("Scottsdale") motion for summary judgment against defendant State Farm General Insurance Company ("State Farm")[1] regarding the former's duty to defend in an underlying landlord-tenant action. (Dkt. No. 43.) The Court heard oral argument on the motion on November 12, 2019.

Having considered the parties' written and oral arguments, and the admissible evidence submitted, and for the reasons set forth herein, the Court **GRANTS** Scottsdale's motion. Specifically, the Court finds that the undisputed material facts show that there is no potential for coverage under the insurance policies at issue for claims raised in the underlying litigation. Accordingly, Scottsdale does not have a duty to defend.

**I.　SUMMARY OF FACTS**

　　**A.　The Underlying Action**

The instant complaint stems from coverage disputes arising out of three related actions filed in the Superior Court for the State of California, County of Alameda, captioned *Andrea Thomas-Paul, et al. v. Prakash Darke, et al.*, Case No. RG18917468; *Mohmmed Alqaisi v. Prakash Darke, et al.*, Case No. RG18931635; and *Sandra Hendrix v. Prakash Darke, et al.*, Case

---

[1] On August 16, 2019, the Clerk issued a notice of entry of default as to defendants Chitra and Prakash Darke. (Dkt. No. 37.)

No. RG18926859. Per the parties' stipulation, the motion at issue addresses Scottsdale's duty to defend only with respect to the first of the three, *Thomas-Paul* (the "Underlying Action").[2] The complaint in the Underlying Action, filed August 20, 2018, concerns a property located at 3610 Enos Avenue, #A, in Oakland, California. That complaint alleges, in relevant part, as follows:[3]

On or about February 1, 2014, Andrea Thomas-Paul rented a two-bedroom apartment unit in a multiple-unit building from Chitra and Prakash Darke. After Thomas-Paul moved into the apartment with her minor children, she discovered that, among other issues, the heater did not work, the property was infested with mice and rats, hot water was routinely unavailable for weeks at a time, the ceiling leaked water, and the security bars on the windows were unsafe or inoperable. Despite Thomas-Paul's repeated complaints, the Darkes failed to correct the defects.

Thomas-Paul complained to the city of Oakland. The city inspected the property and notified the Darkes, in writing, about the defective condition of the property, requesting that the Darkes correct the issues within a specified period. The Darkes failed to do so and continued demanding rent from Thomas-Paul. The city eventually "red tagged" the property "because [it] was not zoned for residential use" and required that Thomas-Paul and her children relocate "because the property was not zoned for residential use and or was not habitable." The city also notified the Darkes, again in writing, that the property was not zoned for residential use, requesting that the Darkes "make appropriate modifications to the property with appropriate building permits, within a reasonable amount of time." The Darkes failed to comply. Thomas-Paul and her children were forced to vacate the apartment on or about July 1, 2018 because of "[the Darke's] harassing and unlawful conduct . . . and or because the city of Oakland red tagged the property because the property was defective and or not zoned for residential use."

Thomas-Paul claims that she was displaced from the property, denied exclusive use of the property, and denied quiet enjoyment of the property from approximately July 1, 2018 through the present. The complaint alleges fourteen causes of action for, among other things, negligence,

---

[2] *See* Dkt. No. 42, ¶ 6.

[3] Index of Exhibits ("IE"), Ex. 3 ("Compl.").

1 nuisance, violation of state and local habitability and zoning laws, constructive eviction, breach of contract, breach of implied warranty of habitability, and breach of employed warranty of quiet enjoyment.[4]

### B. The Policies

Scottsdale issued two successive commercial general liability policies to the Darkes, with effective policy periods of January 10, 2017 to January 10, 2018, and January 10, 2018 through January 10, 2019. (IE, Exs. 1, 2 (collectively, the "Policies").)[5] The relevant coverage sections of the policies state as follows:

**SECTION I—COVERAGES**

**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result. . . .

\* \* \*

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; . . . .

\* \* \*

**SECTION V—DEFINITIONS**

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

---

[4] Scottsdale agreed to defend the Darkes but reserved its rights to seek a declaration of rights and reimbursement of defense fees. (IE, Ex. 6.)

[5] The Policies appear to be materially identical for purposes of deciding this motion.

3

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence' that caused it."

(IE, Ex. 1 at 59, 62, 64, 73; IE, Ex. 2 at 61, 64, 66, 75.)[6]

## II. APPLICABLE STANDARDS

### A. Summary Judgment

Scottsdale has filed a motion for summary judgment on the issue of whether it has a duty to defend the Darkes in the *Thomas-Paul* action. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears "the initial responsibility of informing the district court of the basis for its motion[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To satisfy this burden, the moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322. To survive a motion for summary judgment, the non-moving party must then show that there are genuine factual issues that can only be resolved by the trier of fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). To do so, the non-moving party must present specific facts creating a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324.

### B. Duty to Defend

An "insurer has a duty to defend an insured if it becomes aware of, or if [a] third party lawsuit pleads, facts giving rise to the potential for coverage under the insuring agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 19 (1995), *as modified on denial of reh'g* (Oct. 26,

---

[6] Citations to page numbers in the Policies refer to ECF pages.

1995) (internal citations omitted). Under well-established California law, "the duty to defend is broader than the duty to indemnify." *Montrose Chem. Corp. v. Superior Court*, 6 Cal.4th 287, 299-300 (1993) (*Montrose I*); *see also Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277, 287 (2014) (duty to defend interpreted broadly). "If any facts stated in or fairly inferable from the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises." *Albert v. Truck Ins. Exch.*, 23 Cal.App.5th 367, 377-78 (2018) *quoting McMillin Management Services, L.P. v. Financial Pacific Ins. Co.*, 17 Cal.App.5th 187, 191 (2017).

"Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose I*, 59 Cal.4th at 287; *see also Hartford Casualty*, 59 Cal.4th at 287 (same). The insured need only show a mere possibility of coverage under the policy to establish a duty to defend, while an insurer is entitled to summary judgment only upon a showing that no potential for coverage exists under the policy as a matter of law. *Regional Steel Corp. v. Liberty Surplus Ins. Corp.*, 226 Cal.App.4th 1377, 1389 (2014); *see also County of San Diego v. Ace Property & Casualty Ins. Co*., 37 Ca1.4th 406, 414 (2005); *Montrose I,* 6 Cal.4th at 300; *Gray v. Zurich Ins. Co.* 65 Cal.2d 263, 275 (1966). In other words, if the third-party complaint could not raise a single issue that would bring it within the policy's coverage under any conceivable theory, the insurer need not defend. *Gray*, 65 Cal.2d at 276, n.15; *see also Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1097 (9th Cir. 2010) (obligation to defend excused only when the complaint does not raise, by any conceivable theory, a single issue which could bring it within the policy coverage).

"The duty to defend is determined by reference to the policy, the complaint, and *all* facts known to the insurer from any source." *Montrose I*, 6 Cal.4th at 300 (emphasis in original). "The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." *Id*. "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* at 295 (*quoting Gray*, 65 Cal.2d at 276). "An insurer that has issued an insurance policy that includes a duty to defend must defend any legal action brought

5

against an insured that is based in whole or in part on any allegations that, if proved, would be covered by the policy, without regard to the merits of those allegations." RESTATEMENT OF THE LAW, LIABILITY INSURANCE § 13, *Conditions Under Which the Insurer Must Defend* (AM. LAW INST., October 2019). "For the purpose of determining whether an insurer must defend, the legal action is deemed to be based on: (a) Any allegation contained in the complaint or comparable document stating the legal action; and (b) Any additional allegation known to the insurer, not contained in the complaint or comparable document stating the legal action, that a reasonable insurer would regard as an actual or potential basis for all or part of the action." *Id*.

### III. DISCUSSION

This dispute arises because State Farm contends Scottsdale has a duty to defend based on the allegation that Thomas-Paul was "allegedly [] forced out of her apartment unit" because it was zoned for commercial rather than residential use, and thus, was "red-tagged" by the city. State Farm argues that these specific allegations raise a potential claim under Coverage A for "loss of use of tangible property not physically injured." State Farm concedes that the allegations that Thomas-Paul was constructively evicted from the property would fall within a habitability exclusion in the Policies.

Scottsdale disagrees that the Underlying Action alleges "loss of use of tangible property not physically injured," primarily relying on *Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.*, 148 Cal. App. 4th 976 (2007). It further counters that there was no "occurrence" under the Policies, and in any event, the habitability exclusion precludes coverage.[7]

The Court begins with the question of whether the Underlying Action alleges a "loss of use of tangible property not physically injured" as a threshold topic.[8]

---

[7] Scottsdale cites *Golden Eagle* for the proposition that when a tenant fails to receive the full value of a leasehold, there is no "occurrence." In so arguing, the Court notes, Scottsdale conflates two separate holdings in *Golden Eagle*: first, that failure to receive the full value of a leasehold did not constitute "loss of use of tangible property," and second, that the landlord's "failure to discharge its contractual liabilities under the lease agreement was nothing more than a non-accidental breach of contract," and thus, there was no "occurrence."

[8] The Policies also include a coverage provision titled "COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY," which provides:

6

**A. Coverage A: Loss of Use of Tangible Property Not Physically Injured**

This Court recently discussed *Golden Eagle* and the state of the California law as it relates to a leasehold interest as a potential "loss of use of tangible property," noting that:

> California courts have been somewhat inconsistent in their approach to whether loss of use of a leasehold interest . . . constitutes "loss of use of tangible property." For the negative proposition, that is, loss of use of a leasehold interest is *not* "loss of use of tangible property," [there is] *Golden Eagle Ins.Corp. v. Cen-Fed, Ltd.*, 148 Cal. App. 4th 976, 56 Cal.Rptr.3d 279 (2007). There, the California Court of Appeal, Second District, found that a bank's claim that it was deprived of use of leased space due to its landlord's failure to maintain and repair the premises "rested *entirely on [the landlord]'s alleged breach of the lease and the resulting economic damage* . . . that is, a loss of rental *income* and loss of *use* of leased space[.]" *Id.* at 987, 56 Cal.Rptr.3d 279 (emphasis in original). The *Golden Eagle* court held that "strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property[.]" *Id.* at 987, 56 Cal.Rptr.3d 279 (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 17, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995)). The court further held that the bank's "leasehold interests were not tangible property." *Id.*
>
> More recently, the California Court of Appeal, Fourth District, has called into question the holding of *Golden Eagle*. In *Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729, 733-34, 239 Cal.Rptr.3d 416 (Ct. App. 2018), a

---

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

(IE, Ex. 1 at 64; IE, Ex. 2 at 66.) The Policies define "personal and advertising injury" as injury "arising out of" one or more of several offenses. An amendment to the definition eliminated the following from the list of qualifying offenses:

> The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor[.]

(IE, Ex. 1 at 73, 85; IE, Ex. 2 at 75, 89.) Scottsdale avers that there can be no coverage for any "wrongful eviction" because this offense was written out of the Policies by way of the above-referenced amendment. However, State Farm does not contend that Coverage B applies. Moreover, the elimination of "wrongful eviction" coverage under Coverage B has no bearing on whether a claim may exist under the terms of Coverage A. Accordingly, the Court considers whether a basis for coverage exists under Coverage A, and more specifically, for "loss of use of tangible property not physically injured."

7

> property owner alleged that due to its security company's negligence, a fatal shooting occurred on the property, which in turn caused the property owner's permit to be revoked. There, the court observed that the *Golden Eagle* court "did not cite any authority" for the proposition that a leasehold interest was not tangible property and "questioned whether the proposition was valid." *Id.* at 742, 239 Cal.Rptr.3d 416. The court noted that "a lease is ... a conveyance of an estate in real property. . . . A building is tangible. Dirt is tangible. Hence, a lessee in possession has a tangible property interest in the leased premises." *Id.* at 738, 239 Cal.Rptr.3d 416 (internal citations and quotations omitted). Ultimately, however, the court noted that "anything [it] ha[d] to say on the point [wa]s dictum" because in the case before it, the plaintiff owned, rather than leased, the property at issue. *Id.* at 742, 239 Cal.Rptr.3d 416.

*Conway v. Northfield Ins. Co.*, No. 18-CV-06407-YGR, 2019 WL 3207798, at *5 (N.D. Cal. July 16, 2019). This Court went on to acknowledge "the common-sense approach of *Thee Sombrero*" but concluded that its discussion of *Golden Eagle* was mere dictum, and thus, "[a]bsent contrary authority from a higher court, *Golden Eagle*'s holding that leaseholds do not constitute tangible property remains the current state of the law." *Id*. at *6.

The parties here do not identify, nor is the Court aware of, any authority addressing *Golden Eagle* since this Court's decision in *Conway*. State Farm describes the case as an outlier. However, *Golden Eagle* still represents the only statement of California law which distinguishes physical loss from economic loss for purposes of interpreting the term "loss of use of tangible property" in the context of a leasehold interest. State Farm avers that *Golden Eagle* nevertheless is "easily distinguishable" from this case because (i) it involved a commercial lease; (ii) the *Golden Eagle* plaintiff never moved out of the leased premises and was suing for economic damages only; and (iii) at trial, the *Golden Eagle* jury awarded economic damages for diminution in the value of the leasehold interest only. Nowhere in *Golden Eagle*, however, did the court limit its holding regarding loss of use of tangible property to cases involving commercial leases. Instead, *Golden Eagle* held, more broadly, that there could be no "loss of use of tangible property" for "loss of rental *income* and loss of *use* of leased space" because "leasehold interests [a]re not tangible property." *Golden Eagle*, 148 Cal. App. at 986 (emphasis in original).[9] Moreover, that

---
[9] At oral argument, State Farm also suggested that the *Golden Eagle* court did not have to hold that a leasehold interest is not tangible property in order to reach a decision in the case. This argument fails to persuade, however, because the court's finding that the insurer had no duty to indemnify for "loss of use of personal property" was central to its holding. Further, although the

8

*Golden Eagle* involved a suit for "economic losses" does not meaningfully distinguish it from this case. "Economic loss," as the term is used in *Golden Eagle*, does not refer to loss suffered by commercial tenants only, but rather, refers generally to the "fail[ure] to receive the benefit of [a] lease." *Id*. at 988. Thus, the damages sought in the Underlying Action—including, for example, damages for relocation expenses and loss of exclusive use of the unit—fall within *Golden Eagle*'s definition of "economic loss."

Absent controlling authority limiting *Golden Eagle*'s holding, the Court finds that it applies here. Thus, as applied, the Underlying Action, which alleges the loss of a leasehold interest, does not raise a potentially covered claim under Coverage A for "loss of use of tangible property." Because the Underlying Action does not raise a potential claim under that provision, the Court need not analyze the other requirements for coverage, namely whether any loss of use was caused by an "occurrence" or whether the habitability exclusion precludes potential coverage in any event.

**IV.    CONCLUSION**

In sum, the Underlying Action does not give rise to a potential liability covered by the Policies, and thus, Scottsdale does not have a duty to defend the Darkes in the action. Scottsdale's motion for summary judgment is hereby **GRANTED**.

No later than **December 3, 2019**, Scottsdale shall submit a proposed form of judgment, approved as to form by State Farm.

This terminates Docket Number 43.

**IT IS SO ORDERED.**

Dated: November 22, 2019

                                                            _____
                                                            **YVONNE GONZALEZ ROGERS**
                                                            **UNITED STATES DISTRICT COURT JUDGE**

---

court could have limited its holding to, for example, commercial leases, it did not, and State Farm cannot identify any objective approach for such a limitation. Accordingly, this Court is bound by the law as stated.

9